Thank you, Your Honor. May it please the Court, Eric Brignac for Appellant Lewis Alston. The District Court considered expressly and rejected the government's 4A1.3 upward departure motion. That case was appealed, the decision became final, this Court's mandate issued. At the resentencing, the District Court expressly reopened that same issue, this time granting the government's motion. That was a violation of the mandate rule, and that resulted in an improper guideline. In addition, the District Court applied, as the government concedes, the wrong statutory range. The District Court applied a term of supervised release that was authorized by statute, but that was against the advice of the guidelines. And we also raised the tapia issue, which leads us, I think, to what will really be the heart of this appeal, which is the assumed harmless error analysis most recently articulated by Salveon Matute and the Hargrove case. And the error in this case was harmful. And it was harmful because it was a compilation of multiple errors by the District Court. District Court violated the mandate rule, got the wrong guideline range. District Court fundamentally, again, not her fault, this was pre-Dorsey, but fundamentally misunderstood the seriousness of the crime as articulated by Congress, thought this was a more serious crime than it turns out it actually was and that Congress decided it was, imposed a term of supervised release for this class. Which guideline range are you objecting to, the revised guideline range? Yes, Your Honor, the original, the- The original was 120 to 150? Yes, Your Honor. And the revised was 70 to 87? 70 to 87, exactly, Your Honor. And then- Just as far as the calculation of those respective guidelines ranges, you don't have a problem? No, Your Honor, that was correct. Our problem was, as we said, with the ultimate sentence as it does need to be, but specifically- Your problem is with the consideration of the upward departure motion again. That she expressly considered that upward departure motion, that- Was there anything in our appellate opinion that operated as a prohibition upon the district judge considering an upward departure motion on remand? No, Your Honor, there was not an express prohibition, but the law of- Was there an implied prohibition? No, and that's where I would disagree. There was no, or yes, I'm sorry, yes, Your Honor. There was an implied prohibition, and that comes from the law of the case doctrine as articulated specifically by what's known as the mandate rule. That when there is a specific issue that the parties fully litigate at an initial hearing, then there's an appeal, and on appeal, nothing about that appeal argued about the applicability or whether or not she made a mistake choosing not to apply that guideline provision. Nothing about the subsequent changes in law had anything to do with that upward departure. Let's put it this way. Did the revised guideline range present the district court with a different circumstance? I mean, there's a big difference between 120 to 150 and then 70 to 87, and then when the district court confronted the revised guideline range, and said, well, the previous guideline range was adequate to fulfill the aims of 30, satisfy the 3553A factors, but this revised guideline range makes it a different ballgame because I don't feel that this is adequate in light of his complete refusal to really learn anything from his repeated brushes of the law. And so didn't it really become a different case with the revised guideline range? Your Honor, it did not become a different case with regard to that specific departure motion she applied. However, the district court in this court has said multiple times that the ultimate analysis is whether the sentence imposed by the district court was reasonable under 3553A. And to answer that question, yes, obviously the change in the guideline range as a mechanism of the Fair Sentencing Act was something that changed. But the context of the 4A1.3 motion was different with the 70 to 87 months, and the district court could say I'm not going to grant the 4A1.3 motion with this higher guideline range. I wonder whether, I mean, the Gall decision seeks to invest district courts with a certain amount of discretion, and they're the primary agents in sentencing. And I'm wondering whether we unduly handcuff a district judge or prevent them from exercising their discretion in the way the Supreme Court wanted it to be exercised, which is to arrive at the end of the day with a fair and just sentence reflecting the 3553A factors. Now, if the district court had said what you wanted her to say, which is, look, we've already been, if she'd said to the government, look, we've already been over that, and it's been decided, and I'm not going to entertain this again, it's duplicative, it's repetitive, then that would have been fine, too. And I think the district court had the option of saying I've looked at it before. But didn't she also have the option of saying this is a changed landscape after remand? And a guideline sentence just doesn't reflect what went on here. And then she explains why this was necessary, said the offense level of 23 in Category 4, it doesn't begin to capture the recidivism and the danger the defendant represents. The defendant's facing his fourth term of incarceration, very limited employment history, enlisted in the Army but you went AWOL, received less than honorable discharge, you've been dealing in drugs and doing this type of crime undeterred by your contact with the criminal justice system, not complying with supervisory conditions. And if a district court feels that the revised guideline range just doesn't capture the defendant's repeated refusal to comply with the dictates of law, should we rob that district court of the discretion to consider that? Your Honor, thank you for that question. I will say first that nothing about the guideline, the criminal history upward departure, 4A1.3, asks the court to look at the original guideline range. It's a function of whether the criminal history category accurately captures the defendant's criminal history. Nothing about that changed. But I really want to answer the thrust of your question, which I think is ultimately, had the district court imposed this as a variance? And I would say, wouldn't that be okay? And I would say first, we cannot just gloss over that. The district court did not just impose this as a variance. It was a miscalculation of the guidelines. And Gahl tells us that the court must properly calculate the guideline range. The miscalculation of the guidelines. The miscalculation was the specific application of 4A1.3. And we may disagree. You may feel that it was not a violation of the mandate. And if that's the case, then certainly our position is much weaker. He got a de novo resentencing, correct? I'm sorry, Your Honor? When the case came back, he got a de novo resentencing. I would not say it was a full de novo resentencing in that the only issue that this court addressed. In fact, this court specifically did not address the reasonableness of the sentence. It remanded. There's nothing in the mandate. I think we went over this earlier. There's nothing in the mandate that restricted the district court and what it could look at or restricted the parties in what they might present. Got a new PSR. Right. Yes. And I see, Your Honor, and I would say that what lies behind the mandate rule is the idea that when something has been fully litigated, fully considered, and there was an opportunity to appeal it to this court, that that specific issue cannot be readdressed. And I think the . . . When we decided the case of Susie, one of the Costa Rican sweepstakes folks, which was based on Pepper, we said pretty clearly when it comes back on a general remand, there's a de novo resentencing, the district court isn't encumbered at that point by what transpired before unless we've given some specific direction in the mandate rule. And that seems to come directly from the Supreme Court's decision in Pepper. Right. And I would say that, Your Honor, one of the things, and I'm certainly aware of that, and the distinction is that in Pepper there were actual changed facts. And in this case, none of the underlying facts, by definition, his history, did not change. But what happened, though, the guideline range got corrected from the first sentence. So when it came back, he had a different guideline range, did he not? Yes, Your Honor. Well, so based on that different guideline range, was the court not prohibited to determine, as it did working through the guidelines, that an appropriate upward departure would be warranted? Well, I would say not, Your Honor, on the grounds of criminal history. And obviously I can see the panel, you know, has skepticism that the mandate rule may apply here or that even if it did, that the remand would not allow for this reconsideration. So I think we've made that argument. If I may turn. Yes. What you're saying is, you know, it has a basis in the fact that the district court was entitled to say, we've been over it before, and I don't see any reason to go over it again. But the way I see it is that when this was returned without a prohibition, and when you had a revised guideline range, the district court had discretion to do what it did, even if it wasn't obligated to do what it did. The landscape had shifted a bit. And anyway, I guess that's what I'm saying here. I think there's an overall danger of losing the forest for the trees here. And the forest is that you want a sentence at the end of the day that the sentencing judge feels really serves the basic aims of 3553A. And if we start imposing, if we overread the mandate rule and start imposing mechanical and rigid restrictions, then we get to the point where we're undercutting the flexibility and individualized quality of sentencing. Do you see the danger of that? I do see the danger. I would only say, Your Honor, that I think the danger of allowing parties multiple bites at the apple, as articulated by the policies the mandate rule is meant to enforce, is a competing danger. But in my remaining three minutes, understanding our discussion of the mandate rule, if we may turn to the forest, there were two other significant errors that I submit. And one was that the district court and the government concedes got the statutory range wrong. And the government attempts to say, Well, you know, under 3553A, this didn't matter. She understood who this guy was. She understood that he had these problems with drugs. And I think you articulated some of her reasons, Judge Wilkinson. But 3553A also asked the court, and we have to assume the court was very aware of this, to consider the seriousness of the offense. And the single biggest guidepost that Congress gives us to understand the seriousness of an offense is the range of punishment authorized for that offense. And it is improper to simply ignore. I hear you're just talking about the supervised release. Well, actually, no, Your Honor, the supervised release is certainly an issue, but I'm talking about the statutory range that the actual statutory range he should have had at his remand was 0 to 20 years. The district court believed that this was a crime that Congress wanted to punish 5 to 40 years. And the government, again, on this appeal, concedes post-Dorsey that the proper statutory range was 0 to 20. The district court, this was pre-Dorsey. So the district court sentence under whatever statute was cited would still be within the statutory range? Yes, yes. So I think, Your Honor, if her sentence were outside of the statutory range, then this would be an easy case. We wouldn't be up here today. I think it would have been... 0 to 20 months is well within the range. One of the things you said, well, the district court was influenced by the range of Congress. One of the things you have to ask is, what would be the point, though, in remanding? The district court has said to us as explicitly as we know how, I think this is the sentence that we ought to give and that this is the sentence that we deserve. And, you know, I wonder whether the remand would just be a hoop jump. And, Your Honor, I would say it would not just be a hoop jump because one of the things the district court was obligated to consider and therefore did consider when she said this is the sentence that takes the factors into account was the seriousness of the offense and the punishment range provided by Congress. So some of the factors, and the government rightly notes she did not discuss that in depth, but we of course assume, and I think it's true, that the district court was well aware of the seriousness of the offense as articulated by Congress through the statutory range. So it would not, Your Honor, be a pointless remand. Certainly the facts about the defendant have not changed, but her fundamental understanding of the seriousness of the crime would have changed. I see my light is on, so if there are no more questions... Let me ask my colleagues if they have any. We have no further questions. We thank you. Mr. Rogers. Good morning. May it please the Court, my name is Joshua Rogers and I represent the United States. I'll address these issues briefly, in particular the mandate rule, because the Court, through its questioning, has addressed it pretty... Are there some things you want to touch on that we didn't cover? We may have missed a point that you wanted to make. I think that the Court pretty thoroughly touched on all the issues that are applicable, and in particular the fact that... What did you say about the statutory section? With regard to the statutory section, the defendant has two different arguments. One is that the FSA... There was an error under the FSA with regard to supervised release, and one with regard to the term imprisonment. With regard to the argument regarding error under supervised release, defendant first argued in his opening brief that the district court erred because it was bound by statutory maximum of three years. In our response, we noted that, in fact, in Pratt, this Court said that three years is the minimum. So in defendant's reply, he abandoned his first argument and used a new one in which he argued that the district court violated its obligation to consider the sentencing guidelines and didn't explain why it varied from the advisory guidelines for supervised release. That argument was waived for two reasons. First of all, failure to raise an argument in the opening brief constitutes a waiver. And secondly, after resentencing, the defendant raised the FSA minimums and maximums for imprisonment and then said, quote, at JA 92, I'm not sure that we need to put it on the record. It doesn't affect the guidelines at all, end quote. That's the only mention of the FSA that was there. And therefore, on two different bases, this argument is waived. And I would also note that courts aren't required to do some separate explanation for the term of imprisonment and then the term of supervised release. The court explained in detail why an upper departure or a variance was appropriate, and then just later sends defendant to five years supervised release. Now, with regard to defendant's argument that the term of imprisonment was improper under the FSA, defendant is essentially claiming that because the district court believed the FSA wasn't retroactive prior to Dorsey, it was influenced by this improper range of five to 40 years. Again, as we noted before, the district court gave a whole host of reasons, and it mentioned nothing about the relative appropriateness relative to five to 40 years. The district court, in fact, noted that even though the FSA wasn't retroactive, it was giving a sentence within the range. And therefore, if there was any error, it was harmless. And if the court would like, I can just briefly address this alleged Tapia error. The district court did mention the need for treatment. It was in the long... We understand that. Okay. It's part of a... It was a minor part of the sentencing process, and it probably... The vast likelihood is that it was a Tapia error, but the vast likelihood is it didn't drive the length of a sentence or duration of confinement or anything else. Well, with that in mind, if the court doesn't have any further questions, we would just note the defendant presents no argument that is of merit, and we would ask this court to affirm the judgment of the district court. And if the court doesn't have any further questions, I'll take my seat. Thank you. Thank you. Mr. Brignac. Thank you, Your Honor. Just a couple points. We raised, and it turned out to be a mistake of law, and I apologize to the court for having represented that in the opening brief. We raised the issue of supervised release. We were wrong about that. We conceded that. But, again, the idea of the guideline error was not waived. You know, we presented the issue of the improper sentence of supervised release. So, you know, again... Are you agreeing that there is waiver as far as the supervised release is concerned? No, I'm not agreeing that there's waiver. I believe that by challenging the supervised release in our opening brief, albeit, again, regretfully, through a mistake of law, we did present the issue in our opening brief to preserve it, the idea that that was a mistaken sentence imposed by the district court. You weren't counsel below, were you? No, sir. The joint appendix at page 93, the court was talking about supervised release. She said, I believe it's five years. And the defendant's attorney, Ms. Alspaugh, said, yes, ma'am. Does that constitute invited error? Your Honor, looking at this now, I believe it would constitute plain error. I do not think it would be invited error. She did not ask the court to... She did not affirmatively represent to the court or argue for that sentence, which I think would be required. She agreed with what was said. She agreed with the court. She did not object to the court. So because there was that lack of objection, I would say that that would be plain error, Your Honor. But I do not think it rises to invited error. This defendant had previous convictions, did he not? Yes, Your Honor. Well, 21 Section 841 of the U.S. Code says that in notwithstanding Section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph in the absence of a prior conviction shall be at least three years in addition to such term, et cetera. If there was such a prior conviction, impose a term of supervisor release of at least six years in addition to such term of imprisonment. Well, I do not believe, Your Honor, and forgive me if I'm mistaken, he had the qualifying conviction to reach the six-year term. So I believe under the statute, it was a statutory minimum of three. Our argument, to the extent it's not waived or foreclosed by plain error, is that it ultimately was an upward departure under the guidelines with no explanation. And so it would be actually a mistake under the guidelines, not under the statute. And so if there are no further questions. Thank you very much, sir. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Clyde H. Hamilton